PRAKASH MELWANI
pakmelwani@comcast.net
PO Box 805
Princeton Junction, NJ 08550
Telephone:  (212) 505-1818
Facsimile:  (609) 987-8888

Plaintiff Pro Se

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WASHINTON
# AT SEATTLE

| | |
|---|---|
| PRAKASH MELWANI,<br><br>              Plaintiff<br><br>v.<br><br>AMAZON.COM, INC. and JEFF BEZOS<br><br>              Defendants | Case No.  2:21-cv-01329-RSM<br>Hon. RICARDO S. MARTINEZ<br><br>**FIRST AMENDED COMPLAINT for:**<br><br>**False Designation of Origin<br>15 U.S.C. § 1125(a)(1)(A)**<br><br>**False Advertising<br>15 U.S.C. § 1125(a)(1)(B)**<br><br>**Washington State Law: Breach of Implied<br>Covenant of Good Faith and Fair Dealing**<br><br>**New York State Law: Trademark Dilution<br>NY GBL § 360-1**<br><br>**New York Common Law:<br>Unfair Competition**<br><br>*(JURY TRIAL DEMANDED)* |

Pro Se Plaintiff Prakash Melwani ("Melwani" or "Plaintiff"), as and for his complaint against defendants, Amazon.com, Inc. ("Amazon") and Jeff Bezos ("Bezos"), collectively the Defendants ("Defendants"), alleges on knowledge as to his own acts and otherwise on information and belief as follows:

## NATURE OF THE ACTION

1.      Plaintiff is the rights holder to a family of "Royal Silk" trademarks and he brings this action for false origin and false advertising under the Lanham Act, breach of the implied covenant of good faith and fair dealing under Washington state law, as well as unfair competition and trademark dilution in violation of New York state law.  And, Plaintiff is a third-party seller at Amazon.  Plaintiff seeks damages and equitable relief as the Court deems just and proper.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter under 15 U.S.C. 1121(a), 1331, 1332, 1338(a) and (b), and 15 U.S.C. 1367 for State law violations. Plaintiff's claims are based on violations of the Lanham Act and claims under the statutory and common law of the State of New York and the State of Washington.

3.      Based on the facts cited below, venue is proper under 28 U.S.C. § 1391 (b) and (c), and personal jurisdiction is also proper.

4.      Jurisdiction and venue are also proper under the Business Solutions Agreement ("BSA") that Plaintiff entered into with Amazon when his company was approved as a third-party seller for the Amazon marketplace.  More specifically, The BSA includes a forum selection provision and specifies this court as the Governing Court.

## THE PARTIES

5.      Plaintiff is a United States citizen with an address at PO Box 805, Princeton Junction, New Jersey 08550.  Plaintiff has been injured and will continue to be injured by Defendants' deliberate, bad-faith and unlawful acts.

6.      Defendant Amazon is a Delaware corporation, headquartered at 410 Terry Avenue North, Seattle, in the State of Washington.

7.      Jeff Bezos is the founder and chief control agent of Amazon and was the CEO of Amazon at the time of Plaintiff's injuries. Mr. Bezos' principal place of business is at 410 Terry Avenue North, Seattle, in the State of Washington.  Mr. Bezos authorized and directed the wrongful conduct described in this action.  Plaintiff asserts claims against Bezos both in his individual capacity as well in his capacity as a corporate officer.

### Plaintiff's Royal Silk® Marks and Business

8.      Plaintiff is the owner of all rights, title, and interest in and to a family of multiple registered and common law trademarks using "Royal Silk" as all or a significant portion of the mark (collectively, "Royal Silk marks").  The Royal Silk marks include, but are not limited to, the following U.S. Trademark Applications, Registrations and IC numbers:[1]

| Trademark | Reg. No. | Registration Date | IC | Goods or Services |
|---|---|---|---|---|
| ROYAL SILK | 2338016 | April 4, 2000 | 25 | Wearing apparel made wholly or substantially of silk, namely, tops, shorts, skirts, boxers, scarves, sashes, mufflers. |
| ROYAL SILK (Word and Design mark) | 3578997 | February 24, 2009 | 25 | Wearing apparel made wholly or substantially of silk, namely, scarves, ties, boxer shorts, skirts, tee shirts, long-sleeved |

---

[1]  The IC number designates the International Classification code number of Goods and Services for the purpose of the registration of a trademarks at the United States Patent and Trademark Office.

|  |  |  |  | shirts, and shirts for suits. |
|---|---|---|---|---|
| ROYAL SILK | 3745470 | February 24, 2009 | 3 | Hair conditioner, hair shampoo. |
| ROYAL SILK | 5076644 | November 8, 2016 | 24 | Handkerchiefs, made in whole or in substantial part of silk; silk fabric. |
| ROYAL SILK | 5076644 | November 8, 2016 | 45 | Providing information in the fields of silk, the folklore of silk, the history of silk, and the proper care of silk via websites on a global computer network. |
| ROYAL SILK | 5792192 | August 31, 2018 | 22 | Laundry wash bags |

9.     Plaintiff's Royal Silk marks have achieved incontestable status under 15 U.S.C. § 1065, as the result of which, under U.S.C. § 1115(b) of the Trademark Act, the registrations are the conclusive evidence of the validity of the marks and of the registrant's exclusive right to use the marks on or in connection with the goods or services specified in the affidavit establishing the incontestability.

10.     Plaintiff's Royal Silk marks are validly registered or applied for, subsisting, unrevoked and uncancelled.

11.     Further, Plaintiff has other pending trademark applications for "Royal Silk" in the United States, Australia, Europe, China, and India, in addition to registrations in Canada and Japan.

12.     After forty-four (44) years of use in interstate commerce, the Royal Silk mark is well-known to the buying public as identifying and distinguishing Royal Silk goods exclusively and uniquely as a reliable source of affordable high-quality silk merchandise and services to which the Royal Silk marks are applied. The Royal Silk marks have acquired enormous value, goodwill and marketplace recognition in the United States.

13.     Royal Silk is a strong mark and a powerful niche brand that has grown and developed over a long period of time with accessible high-quality silk products, targeted advertising, high customer satisfaction, and valuable word of mouth.

14.     Moreover, the mark is strong since Royal Silk is considered a "lifestyle brand," which means that it is a crossover identifier across categories of goods and demographics such as: men's and women's apparel, accessories, footwear, home furnishings, home goods, as well as cosmetic, body care, beauty and fragrance products.

15.     Plaintiff is engaged in the licensing of the Royal Silk marks for the manufacture, distribution, sale, marketing and promotion in interstate commerce of the Royal Silk line of clothing, accessories, personal care products, and services.  Plaintiff and/or his predecessor-in-interest, have been continuously using the Royal Silk marks for over forty-four years, beginning in March 1978.

16.     A wide and diverse range of Royal Silk goods are sold at Amazon.com exclusively by Royal Silk Direct, Inc. ("Royal Silk Direct") including, but not limited to: men's and women's apparel, accessories, and personal care products. Royal Silk Direct, based in Princeton, New Jersey, is an exclusive licensee of Plaintiff for all sales of all Royal Silk goods at Amazon.com and other online marketplaces.

17.     Royal Silk products sell for low to moderate prices and are generally advertised as "Affordable Silk Elegance" or "Affordable Silk Luxury."  Royal Silk products can be viewed at RoyalSilkUSA.com, an e-commerce site owned and operated by Royal Silk Direct.

18.     Plaintiff's marks are enrolled in Amazon Brand Registry ("Amazon Brand Registry"), a program designed by Amazon to allow brand owners "greater influence and

control" over the brand's product listings on Amazon.com as well as "to proactively provide brand protection by removing suspected infringing or inaccurate content."   Amazon Brand Registry also provides a customized brand dashboard and other selling and marketing tools and guides to enable brand owners "to build, grow, and protect their products."

19.     Another much-touted benefit of participating in Amazon Brand Registry is the ability for the brand owner to build its own custom-designed Amazon storefront.  Hence, Royal Silk Direct maintains an authorized Royal Silk storefront ("Royal Silk Store") on Amazon.com.

20.     Royal Silk products have been sold at Amazon.com since 2006.  Non-stop since 2006, Plaintiff has been plagued by third-party infringers of the Royal Silk marks across categories of goods at the Amazon marketplace.  In the last two to three years, Plaintiff's legal actions and notices have resulted in the removal of about two hundred (200) infringing listings from Amazon.com that were attributed to about one hundred (100) different unauthorized third-party sellers.

21.     Despite its promises and assurances, not once in the last three years has Amazon's Brand Registry offered any "proactive brand protections" for the Royal Silk mark against third-party users that were improperly and unlawfully using the "Royal Silk" identifier in its product titles and/or product images.  Instead and ordinarily, it has been disturbingly frustrating, and almost impossible, to remove any listing through Amazon's Brand Registry channel.

22.     Because Plaintiff was a participant in Amazon's Brand Registry, and because of Amazon's assurances, Amazon had an affirmative duty to protect its Royal Silk marks from casual, careless and reckless use by third-party sellers.

23.     Amazon's deliberate and/or blind disregard to improper and counterfeit use by third-parties of the Royal Silk mark was wrongful bad-faith conduct that has injured Plaintiff.

24.     More specifically, around 2016, Amazon began the process and policy of "gating" certain brands or, in other words, giving such brands a much higher level of scrutiny and protection from third-party sellers.  In effect, "gated" brands could no longer be sold, marketed or promoted by third-party sellers without a comprehensive approval process to ensure that the products being sold were lawfully acquired or licensed.

25.     Amazon has long known that Plaintiff's company, Royal Silk Direct is the exclusive third-party seller of all Royal Silk goods.

26.     As a general principle, Amazon discriminates and favors certain brands, including its own, with enhanced protection rights over other brands without any transparent policy guidelines or other good-faith disclosures to Plaintiff or other brand owners about how to get similar enhanced protection rights and considerations.  As a result, Amazon has acted unfairly and in bad faith, and continues to do so to this day.

27.     On the whole, Amazon has been generally aware of Plaintiff's infringement concerns and related legal actions.  And, despite considerable friction and resistance from Amazon's customer service staff to Plaintiff's notices of infringement violations, Amazon has, by and large, cooperated with Plaintiff in the removal of infringing listings, specifically by providing Plaintiff with secondary means of reporting.

28.     On or about the middle of 2020, Plaintiff engaged in communications with Joseph Gratz ("Gratz"), Amazon's outside counsel, concerning Defendants' wrongful and unlawful conduct that is described in in this Complaint.  After a lengthy discussion about the basic facts

and applicable law, Mr. Gratz disagreed with Plaintiff's contentions — adopting the position that Defendants' conduct was proper, lawful, and defensible.  Consequently, Plaintiff moves to seek relief and remedy in this Court.

**Relevant Facts about Amazon and its Business**

29.    In order to further explain and substantiate Defendants' wrongful conduct, Plaintiff unravels Amazon's multiple roles in this action.

30.     First and foremost, Amazon owns and operates a dominant, world-renowned online marketplace under the domain name Amazon.com ("Amazon.com"), whereby Amazon hosts, monitors, regulates, and controls millions of third-party vendors.  In return, Amazon.com collects fees and sales charges from those third-party vendors who sell, promote, advertise, warehouse and distribute hundreds of millions of products at Amazon's marketplace.

31.    Second, all third-party vendors at Amazon.com are vetted by Amazon and need to abide by, sign-on and sign-off to the terms of its Business Solutions Agreement ("BSA").

32.    Third, Amazon is an e-commerce seller of its own branded products, some of which compete with Plaintiff's goods.

33.    Fourth, Amazon is a payment-processor for all third-party sales and the sale of its own products, in effect of all sales at Amazon.com, amounting to hundreds of billions of dollars.

34.    Fifth, Amazon warehouses, ships, handles customer service issues and payment processing services for such third-party vendors who opt to enroll and sell through its higher fee-based Fulfilled by Amazon ("FBA") program[2].  In this case, Amazon customers choose to pay an

---

[2] Alternatively, under the Seller Fulfilled Program, third-party vendors can sell, process orders and ship directly to the buying public and charge such shoppers shipping fees as opposed to free shipping under FBA.

annual fee for Amazon Prime membership to receive FBA benefits like free shipping and free returns.  And, in turn, vendors benefit from potentially much higher sales and visibility.

35.     Sixth, Amazon owns, operates and controls its own advertising platform, Amazon Advertising ("Amazon Advertising") that allows all third-party vendors to bid for, buy and pay for the keywords "Royal Silk" for sponsored advertisements that appear on Amazon.com.

36.     Seventh, Amazon Advertising not only promotes, solicits and sells sponsored display advertisements to third-party sellers at Amazon.com through sales and auctions of the keywords "Royal Silk," but also encourages the use and purchase of  the keywords "Royal Silk" through its keyword suggestion tool that is readily available to any third-party advertiser.

37.     Eighth, compounding all of the above wrongful conduct, Amazon itself uses the keywords "Royal Silk" to promote, sell, and merchandise its own products which then compete with Plaintiff's goods.

**Plaintiff's Initial Search Results A to D for the Keywords "Royal Silk"**

38.     At any given time of day or night, on any electronic device with Internet service, Amazon's Search Box ("Search Box") is the starting point of any text query for hundreds of millions of shoppers all around the world who shop or browse at Amazon.com.  Amazon's Search Box is always easy to find, shown as a wide, white rectangular box, prominently featured at the top of every page of the website.

39.     Amazon's Search Box is the single most important tool for shoppers at Amazon.com.  The Search Box provides detailed price and features' information about nearly any generic or brand name product, even when that brand name is unavailable for sale.  Shoppers

simply enter a word, or a string of words, into Amazon's Search Box, describing what they seek, and about sixty search results pop out in a split second.

40.     Amazon's Search Box is, therefore, the principal source of Amazon's online consumer and business sales.

41.     Plaintiff regularly patrols and polices prominent domestic online marketplaces and search engines so as to monitor, prevent, report, and enforce trademark and copyright infringements involving his Royal Silk marks.

42.     In recent times, Plaintiff has investigated the Amazon.com marketplace and conducted numerous searches for "Royal Silk" across categories of goods and departments.

43.     On or about August 19, 2020, using a desktop computer, a query for the "Royal Silk" brand in the Search Box at Amazon.com, under all departments, provided a search results page ("Search Results Page") which, in turn, yielded sixty product listings ("product listing" or "product listings"), each consisting of an image of the product, the title of the product, the price of the product, a shipping charge if there is one (or else a "Prime" emblem indicating free shipping for Amazon members), a one-to-five star rating of the product, and the number of customer reviews for the product (collectively, "**Search Results A**").

44.     Certain product listings have additional identifiers, such as: (a) "Sponsored"; (b) "Best Seller'; (c) "Amazon's Choice"; (d) or a bright colored box indicating a sale price.  The first identifier, "Sponsored," refers to Sponsored Ads, which means that such product listings are paid display ads as opposed to organic search results.  The other three identifiers, such as discounted price, star ratings, number of ratings, are self-descriptive, and serve as extra inducements and attention-getters for shoppers' special consideration and immediate action.

45.     Amazon's search results are dynamic, not static.  In practice, search results can vary both on intra-day and day-to-day basis showing different product listings and positioning from one time to another and in a variable order.  Regardless of the product listing or its order, the general format of the Search Results Page these days typically yields about sixty (60) product listings for a common search query.

46.     On the whole, a simple analysis of **Search Results A** (for the term "Royal Silk') showed that of the sixty (60) search results: **(a)** seventeen (17) search results, or less than thirty per cent (30%), were for Royal Silk products; this means that over seventy per cent (70%) of the search results were unrelated to Royal Silk; **(b)** Forty (40) search results totally were unrelated to the query "Royal Silk;" of these, eight (8) were paid Sponsored Ads for third-party sellers who purchased the keywords "Royal Silk;" thirty-two (32) were from other third-party sellers many of whom likely purchased the trademarked "Royal Silk" keyword from Amazon; and **(c)** the remaining three (3) were third-party infringers, unlawfully using or showing the words "Royal Silk" in their Product Listings.

47.     Notably absent from **Search Results A** was any mention of the Royal Silk Store or any product listings for Royal Silk pocket squares or handkerchiefs, of which there are over two hundred (200) product listings, and which together are, by far, the biggest sellers, by units, for the Royal Silk brand at Amazon.com.

48.     On the same day, August 19, 2020, Plaintiff conducted second and third queries for the term, "Royal Silk," the second query under women's department ("**Search Results B**") and the third query under men's department ("**Search Results C**").

49.     **Search Results B,** the second query filtered for the women's department, revealed that only five (5) of the sixty (60) product listings were for Royal Silk products of which two (2) were organic and three (3) were Sponsored or paid-for.

50.     Of **Search Results B**, fifty-five (55) of the sixty (60) were non-responsive product listings that were completely unrelated to the query "Royal Silk."  In other words, ninety per cent (90%) of the search results in the second query were not Royal Silk products.

51.      Of the fifty-five (55) non-responsive product listings in  **Search Results B**, eight (8) were Sponsored ads from third-party sellers whereas forty-seven (47) products were from other third-party sellers, who likely purchased the "Royal Silk" keyword from Amazon.

52.     Notably, three (3) of the non-responsive product listings under **Search Results B** were Amazon's own products under the "Amazon Essentials" ("Amazon Essentials") label.

53.     **Search Results B,** like **Search Results A**, provided neither a link nor any search result for the Royal Silk Store at Amazon.com.

54.     **Search Results C** (search for "Royal Silk" in the men's department) produced just eight (8) product listings for Royal Silk goods and fifty-three (53) other unrelated products. Of the eight (8) Royal Silk product listings, only two (2) out of eight (8) were actual men's products and six (6) were not even men's products.  In other words, about ninety-six per cent (96%) of **Search Results C** were either outright false or outright erroneous.

55.     More specifically, about eighty per cent (80%) of **Search Results C**, or fifty (50) out of the sixty-one (61) results, had no relationship to the Royal Silk mark.  The remaining three (3) of the product listings were improper, unlawful and unauthorized products using or showing the name "Royal Silk."

56.     Thirteen (13) of the sixty-one (61) product listing in **Search Results C** were paid-for Sponsored Ads by third parties.

57.     Of **Search Results C,** about two-thirds of the product listings under men's products were not even for men's products.   Over sixty-five per cent (65%) of the product listings were for women's products.

58.     **Search Results C** contained two product listings for Amazon Essentials, one for men's product and one for women's product.

59.     **Search Results C**, like the first two search results described above, offered no link for the Royal Silk storefront. More significantly, of the several hundred existing product listings for men's Royal Silk pocket squares and ties at Amazon.com, not a single pocket square or tie was listed or visible in **Search Results C**.

60.     Ultimately, Plaintiff conducted a specific query in the Search Box for the term "Royal Silk Store" ("**Search Results D**").   The results were as follows:  **(a)** Astoundingly this time, the Search Box found over five thousand (5000) search results; **(b)** the first-page of **Search Results D** produced sixty-two (62) product listings, of which zero (0) or none were for Royal Silk goods or the Royal Silk Store; **(c)** fourteen (14) of the sixty-two (62) Product Listings were Sponsored Ads by third-party sellers; **(d)** two (2) of the product listings were Amazon's own, one under the Amazon Essentials label, and one that appeared as Amazon Brand roast coffee; **(e)** the second-page of **Search Results D** yielded one (1) Royal Silk product of the sixty (60) or so product listings; **(f)** the third-page of **Search Results D** yielded zero (0) Royal Silk products; and **(g)** none of the over five thousand (5,000) search results showed a link to the Royal Silk Store.

61.     To sum up, **Search Results D** showed exactly one (1) Royal Silk product listing out of approximately one hundred and eighty three (183) search results in the first three pages. Put another way, in the first three pages of **Search Results D**, over ninety-nine per cent (99%) of the product listings completely failed to direct the shopper to the Royal Silk product or the Royal Silk storefront at Amazon.com.

62.     Often the search results for the keywords "Royal Silk" are links for fake or non-silk products.  So, for example, one prominent product listing is for fake silk curtains and the text says as much by use of the words "Faux-Silk-Blackout-Curtains," indicating that they are imitation silk curtains.  Another prominent product listing is for women's LONGXU "satin silk pajamas" as described in the title of the product detail page, but in fact they are not made of silk at all, instead the "satin silk" pajamas are actually made of polyester, and not of genuine silk. [3]

63.     In fact, Amazon's search results for "Royal Silk" show that the use of words "Silk" and "Satin" in product titles and product detail pages is pervasive, ubiquitous and widespread in the many hundreds; yet in almost every manifest case, the actual "satin" or "silk" product is not only not made of genuine silk but also has no silk content whatsoever.

64.     It is evident that search results for "Royal Silk" yield product listings that are not only unrelated to "Royal Silk" but even totally irrelevant and unrelated to the category of silk.

65.     Based on the facts cited above, it is quite apparent from **Search Results A** to **Search Results D** that Amazon's search results for "Royal Silk" are likely to cause mistake or deceive as to the affiliation or association of the seller to the actual rights owner of the Royal Silk marks.

---

[3] Plaintiff has purchased several pairs of these fake "LONXU women's silk satin pajama set" and verified, via product labels, that they are not made of genuine silk nor do they contain any percentage of genuine silk.

**Plaintiff's Recent Search Results for the Keywords "Royal Silk"**

66.     **Exhibit A** shows the first twelve search results that appeared when Plaintiff entered the keywords "Royal Silk" without any filters in the Search Box on March 29, 2022.

67.     **Exhibit B**  is an expanded view of the third search result which shows alleged "Royal Silk" eyelashes that are made of some type of synthetic material that is not further identified or described in the product detail page.

68.     **Exhibit C** is an expanded view of the seventh search result which shows a bag of alleged "Royal Silk" fiber fill that is actually made of polyester according to the product detail page.  Moreover, as the visual reveals —there is use of a "TM" trademark symbol on the upper right hand corner to the words "Royal Silk."

69.     **Exhibit D** is an expanded view of the eleventh search result which shows an image of a 120ml bottle and companion box of alleged "Royal Silk" Emulsion, described as a moisturizing lotion in the product detail page.

70.     In fact, none of the alleged "Royal Silk" products shown in Exhibits B, C and D have any affiliation, connection, or association with Plaintiff's valid Royal Silk marks.

71.     Further, none of the makers or sellers of the alleged "Royal Silk" products shown in Exhibits B, C and D have any legitimate rights or valid licenses for any Royal Silk mark.

72.     The use of the "Royal Silk" mark used in the products shown in Exhibits B, C and D is false, deceptive and misleading in each case and likely to cause mistake or to deceive the public about the origin, sponsorship, connection, association, or affiliation of the third-party sellers to Plaintiff and its valid Royal Silk marks.

73.     The use of the "Royal Silk" mark used in the non-silk, synthetic products shown in Exhibits B and C is false, deceptive and misleading in each case and is likely to cause mistake or to deceive the public about the nature, qualities and characteristics of Plaintiff's goods that are actually made of genuine silk.

74.     The use of the "Royal Silk" mark in conjunction with "TM" trademark symbol is used in the products shown in Exhibit C is explicitly false because the database at the United States Trademark and Patent Office ("USPTO") shows no such applicant or registered mark for the alleged "Royal Silk" fiber fill in any class of goods.

75.     **Exhibit E** is an expanded view of the sixth search result which shows an alleged blue silk scarf described as "Silk Scarf for Women Feeling Silk" branded as RIIQIICHY that, in fact, is made of 100% Polyester and contains no silk.  Also included in Exhibit E is a relevant portion of its product detail page showing additional uses of the word "silk" and "this silk scarf."

76.     The item featured in Exhibit E is Amazon's Choice ("Amazon's Choice") for "large silk shawl."  The word "silk" is used twice in the product title shown in Exhibit E and multiple times in the product detail page.  The use of the word "silk" by Amazon, as well as by the third-party seller, is explicitly false and deceptive and misleading.

77.     Similarly, the ninth search result, branded as "MissNina" in Exhibit A, is for a "silky," "satin" floral bathrobe that is described as made of "Quality Imitation Silk" in the product detail page.  The actual fiber content of the "satin" material is not described anywhere.

78.     Defendants' marketplace employs what is widely believed to be best practices for a modern, innovative, customer-centric, giant, world-class, technologically-advanced global company.  So when shoppers, browsers and other ordinary consumers conduct a specific brand

16

search or even a generic search through Amazon's Search Box, they have every right to expect informational clarity and accuracy.

79.     Instead, the twelve search results for "Royal Silk" in Exhibit A show that eight out of twelve results, or 66%, are completely unrelated to the Royal Silk brand.

80.     The very purpose of trademark law under the Lanham Act is to provide informational integrity in the marketplace, since by insuring that consumers are not misled about what they are buying, the registered trademark allows them to use their time and capital more efficiently to the brands they find most worthwhile and deserving.

81.     It is evident that Amazon's brand search results, in the case of Royal Silk, consistently yield the exact opposite of the intent and the letter of the Lanham Act.

82.     To make matters worse, Amazon does nothing to alleviate or remedy the misrepresentations, such as bifurcating the results between the brand and the non-brand, or by differentiating the search results in some other meaningful way that is readily understandable to the consumer, especially so as to distinguish real silk from fake silk.

83.     Alleviating these problems should not be that difficult for Amazon, one of the world's most customer-centric and technologically-advanced organizations, particularly because in a world where time is of the essence, what matters, too, is the prolonged duration of the time wasted and incoherent abundance of the resulting aggravation and annoyance for the consumer.

**Defendants' Misappropriation of Plaintiff's Royal Silk mark**

84.     Defendants, without license or approval from Plaintiff, and without compensating Plaintiff, have misappropriated and continue to misappropriate, Plaintiff's trademark by selling the keywords "Royal Silk" in interstate commerce within the Internet context.  As a result,

Defendants have acted in bad faith to improperly profit and benefit from the goodwill that Plaintiff, a trademark rights owner, has developed with its marks.

85.    One of the most valuable benefits afforded by the Lanham Act to the trademark owner is the control and the right to manage and curate the quality and image that its brand represents.  Whereas in this case, Defendants rob and thwart Plaintiff's ability to exercise his right to quality and image control of the Royal Silk marks.

86.    Amazon knowingly and routinely sells and encourages use of Plaintiff's trademarked name, as keywords, to a broad range of undifferentiated third-party sellers. Moreover, Amazon unlawfully profits from its own brands' targeted use of Plaintiff's marks.

87.    Amazon, through use of its keyword suggestion tool and other promotional means, intentionally facilitates and induces its third-party sellers to advertise through purchase of Plaintiff's registered Royal Silk trademark.

88.    By contrast, Amazon routinely and aggressively prevents the use or sale of certain keywords associated with its own products and/or services[4].  For example, Amazon does not allow third-party sellers, who are its business competitors, to bid on the keywords "Fire TV" or "Echo Show" or "Ring Doorbell."  All three of these keywords are products and/or services that are exclusively sold and promoted by Amazon on Amazon.com.

89.    In summary, Defendants improperly profit in multiple ways from the described deliberate and bad-faith wrongful conduct. So, for example, and not limited to this list:  (i) Defendants collect significant sales commissions and assorted monetary fees and charges from its third-party sellers; (ii) Defendants profit from the sale of the keywords "Royal Silk" to third-party advertisers; (iii) Defendants profit from the sales of its own Amazon branded products across categories and departments through direct commercial use of "Royal Silk" trademark; (iv)

---

[4] "Fire TV" and "Echo Show" and "Ring Doorbell" are applied-for marks or trademarks registered by Amazon.

whenever Amazon acquires a new customer as a result of Royal Silk ads, Amazon further profits from future sales to that new customer; (v) in addition, if that new customer signs up for the Amazon credit card, Defendants profit from the assorted fees and financial charges for the life of that card; (vi) a substantial portion of new customers proceed to subscribe to Amazon's Prime Membership ("Prime') and/or other membership programs for various benefits, as a result of which Defendants profit from annual, recurring membership fees; (vii) new customers, new Prime members, new credit card holders, additional sales and profits, in turn, increase the overall enterprise value of Defendants' business; and (viii) Defendants unlawfully profit and benefit from the goodwill that Plaintiff labored to develop in its Royal Silk marks.

90.     Defendants' past and ongoing practice of extensive, continuous, unlimited sale and auction of Plaintiff's trademark, as keywords, to itself and its third-party advertisers, further injures Plaintiff because it forces his exclusive licensee, Royal Silk Direct, to often make higher bids for Plaintiff's own mark and thus pay more than would be the case absent Defendants' wrongful conduct.

91.     All in all, Defendants' improper, unlawful and bad-faith conduct has been knowing, deliberate, willful, intentional, malicious and oppressive. Defendants' wrongful conduct and infringing actions have been in total disregard of Plaintiff's lawful rights.

**The Basis for the Claims Againt Jeff Bezos**

92.     Plaintiff accuses Defendants of unfair competition and of violating his intellectual property rights by unlawfully soliciting, encouraging, trafficking and profiting from the sales of its Royal Silk trademark to third-party advertisers in the form of keywords.

93.     When Amazon first introduced its advertising services in 2012, Amazon's initial policy on keyword advertising was to screen for trademarks and to prevent third-party advertisers from purchasing registered trademarks of other persons or businesses.

94.     At some point, around 2015 or 2016, Amazon changed its search engine policy and stopped screening for trademarks. After the policy change, Amazon started selling trademarked keywords to third-party advertisers.

95.     This single, significant shift in Amazon's advertising policy and solicitation strategy has been immensely successful and resulted in fast-growing revenues for the company. For example, in 2021 the Amazon advertising business generated $31.2 billion in revenue, with 4th Quarter 2021 advertising sales surging by 32%.

96.     Amazon's 2021 advertising revenues were higher in total than those of three other prominent online marketplaces, namely Walmart, Etsy and eBay, put together.

97.     Significantly, by the 4th Quarter of 2021, Amazon's advertising revenues comprised about 7% of its total revenue.

98.     For Amazon to have knowingly reversed its advertising policy, and to have knowingly made the decision to use trademarked terms to sell advertising, and to potentially infringe on rights' holders, was a major company matter and a high-level company strategy that had to be understood, approved and sanctioned by its boss Mr. Jeff Bezos ("Bezos").

99.     At the time of Plaintiff's injury, Mr. Bezos was the Chief Executive Officer, the President and, by default, he was also the Chief Operating Officer of Amazon.  As such, and by definition, Mr. Bezos was responsible for making top-level operational and managerial decisions. Mr. Bezos was the ultimate authority in making final decisions in major Amazon company matters.  Therefore, it is reasonable and likely that Mr. Bezos, the central corporate figure and the guiding spirit at Amazon, personally directed, controlled, ratified, endorsed and directly

participated as the active, moving, conscious force in the Lanham Act and Unfair Competition wrongful actions that have injured Plaintiff.

100.    Further, specifically with respect to the change in Amazon's advertising policy, Plaintiff believes that Mr. Bezos acted in concert with one other senior officer, namely Jeffrey M. Blackburn ("Blackburn"), who has been with Amazon since 2006 as a close aide and top advisor to Mr. Bezos.

101.    Significantly, Mr. Blackburn was a key player in the launch, management, policy-making, and growth of Amazon's advertising business.

102.    The Lanham Act imposes liability for trademark infringement and other acts of unfair competition on a corporate officer who authorizes, directs or participates in the aforementioned unlawful acts.

103.    After discovery is completed, Plaintiff reserves the right to add Mr. Blackburn as a defendant in this case.

**FIRST CAUSE OF ACTION**
*False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A)*

104.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 103 above as if fully set forth herein.

105.    Defendants' commercial use of the Royal Silk mark, along with its use of false and misleading descriptions without Plaintiff's consent, constitutes trademark infringement in that, among other things, such use is likely to cause confusion, deception and mistake among the consuming public and trade as to the source, approval or sponsorship of the infringing goods.

106.    Defendants' improper, bad-faith conduct has been knowing, deliberate, willful, and deceptive to the public and has been in total disregard of Plaintiff's rights.

21

107.     Defendants have injured Plaintiff in an amount to be determined at trial and have caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

108.     Defendants' aforesaid acts constitute trademark infringement and false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A) making available to the Plaintiff the remedies provided for by 15 U.S.C. §§ 1116 – 1118.

## SECOND CAUSE OF ACTION
### *False Advertising  under 15 U.S.C. § 1125(a)(1)(B)*

109.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 108 above as if fully set forth herein.

110.     In its role as manufacturers, distributors, promoters, marketers, advertisers of their own branded products and services, and as investors and funders of third-party brands, Defendants compete with Plaintiff directly and vicariously across categories and departments.

111.     Defendants, in connection with Plaintiff's marks, have engaged in use of false and misleading representations of facts in commercial advertising and promotion that are likely to cause mistake or deception through misrepresentations about the nature, source, characteristics, qualities or geographic origin of Plaintiff's goods and services .

112.     Defendants' unlawful and bad-faith conduct, with total disregard to Plaintiff's rights, has been knowing, deliberate, willful, and explicitly deceptive to the public and the trade.

113.     Defendants' improper and unlawful conduct has injured Plaintiff in an amount to be determined at trial and has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

114.    Defendants' aforesaid acts in interstate commercial advertising, that have been persistent and continuous to this day, constitute trademark infringement and misrepresentation of the nature, characteristics, qualities or geographic origin of Plaintiff's goods is in direct violation of 15 U.S.C. § 1125(a)(1)(B) making available to the Plaintiff  the remedies provided for by 15 U.S.C. §§ 1116 – 1118.

### THIRD CAUSE OF ACTION
***Breach of the Implied Covenant of Good Faith and Fair Dealing***

115.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 114 above as if fully set forth herein.

116.    It is undisputed that since 2006, there has been a contract between Plaintiff, a third-party seller, and Amazon, in the form of Business Solutions Agreement ("BSA").

117.    To be sure, the BSA applies to all third-party sellers of Amazon's marketplace.

118.    As alleged in ¶¶ 18-26, Plaintiff also participated and enrolled his registered Royal Silk marks in Amazon Brand Registry, a program designed by Amazon to allow brand owners with validly registered trademarks "greater influence and control" over the brand's product listings on Amazon.com as well as "to proactively provide brand protection by removing suspected infringing or inaccurate content."

119.    In fact, despite its assurances and promises, Amazon has not proactively provided brand protection even once by removing suspected infringing or inaccurate content related to the Royal Silk marks.

120.    As alleged in ¶ 24, Amazon gives preferential treatment to certain brands in the Amazon Brand Registry but does not disclose or explain its discretionary policy guidelines.

121.    Amazon's inaction and failure of diligence, along with its abuse of discretionary power to specify terms, along with its failure to cooperate fully with Plaintiff's success by ignoring his year-to-year concerns about third-party infringers of the Royal Silk marks, was not objectively reasonable; if anything, Amazon's manifest wrongful conduct evaded the spirit and the premise of the bargain between itself and Plaintiff.

122.    Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.

123.    Contrary to the "doctrine of prevention" in common law contract claims, by awarding discretionary preferential treatment to certain brands and rights owners, Defendants knowingly interfered with the benefits promised to the rest of the rights owners, including Plaintiff, in a way that the latter could not reasonably expect or contemplate and thus Defendants breached its duty of good faith and fair dealing with Plaintiff.

124.    Defendants' wrongful conduct has been knowing and deliberate.  As a result, Plaintiff has been injured, damaged and irreparably harmed for which he has no adequate remedy at law and for which he seeks equitable relief, along with monetary and punitive damages.

### FOURTH CAUSE OF ACTION
*Trademark Dilution under N.Y. General Business Law § 360-1*

125.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 124 above as if fully set forth herein.

126.    Plaintiff's registered Royal Silk marks are strong and inherently distinctive.

127.   During a period of over 45 years, Plaintiff's Royal Silk marks have acquired considerable goodwill and are identified by the public and distinguish Plaintiff's silk business and services from other merchant businesses and services.

128.   Defendants' unauthorized and unrestricted commercial use of the Royal Silk marks to advertise polyester, synthetic, and other non-silk goods and/or services, that are materially different from those of Plaintiff, along with advertisements for counterfeit goods that are improperly and unlawfully labeled as Royal Silk, is likely to dilute by blurring or tarnishing the distinctive quality of Plaintiff's marks by diminishing the ability of the marks to exclusively distinguish Plaintiff's goods and services from those of others and by injuring the reputation of Plaintiff's business and its marks.

129.   As a result, Defendants have harmed, tarnished and damaged the public image and business reputation of Plaintiff, and diluted its Royal Silk marks.

130.   Defendants' deliberate misconduct in violation of New York General Business Law § 360-1 has injured Plaintiff in a monetary amount to be determined at trial, along with punitive damages, and has caused and will continue to cause irreparable injury to Plaintiff for which there is no adequate remedy at law.

### FIFTH CAUSE OF ACTION
*Unfair Competition under the Common Law of New York*

131.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 130 above as if fully set forth herein.

132.   Defendants' aforesaid acts constitute False Designation of Origin under 15 U.S.C. § 1125(a)(1)(A), False Advertising under 15 U.S.C. § 1125(a)(1)(B), unfair competition, and unfair trade practices under the Lanham Act.

133.    Moreover, Defendants' negligent, bad-faith, reckless and willful use of Plaintiff's mark over a long period of time to sell advertising to third-party counterfeiters and infringers has infringed on its distinctive attributes in a manner likely to deceive, in the public's mind, Plaintiff's Royal Silk products, services and advertising with the products, services, and/or advertising of others.

134.    Defendants' bad-faith misappropriation of Plaintiff's goodwill in violation of his rights to the Royal Silk marks constitutes Unfair Competition under New York common law.

135.    Defendants have acted negligently, unreasonably and in bad faith through its imperfect contract performance by evading the spirit of the bargain that Defendants purported to offer to rights owners who signed-on to the Amazon Brand Registry program, by abuse of its discretionary power to specify terms whereby certain brand marks were "gated," by failure to exercise its discretionary duties to inform brand owners about the use and sale of the latter's trademarks in advertising, and by failure to fully cooperate with Plaintiff's concerns about third-party infringers and counterfeiters of the Royal Silk marks and sellers of fake silk products.

136.    By reason of the vast asymmetrical balance of power between Plaintiff and Defendants, Defendants' deliberate and wrongful conduct has been malicious and oppressive.

137.    Defendants' bad-faith misconduct has caused irreparable injury to Plaintiff and to the goodwill of his Royal Silk marks for which Plaintiff has no adequate remedy at law.

138.    Plaintiff seeks monetary and punitive damages in an amount to be determined at trial, along with fees, costs, and other equitable remedies and relief provided for under 15 U.S.C. §§ 1116 -1118.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment be entered granting the following relief:

1.      Judgment that:

(a)      Plaintiff's Royal Silk marks are valid and enforceable and are the exclusive property of Plaintiff; and

(b)      Defendants have infringed Plaintiff's Royal Silk marks and competed unfairly and unlawfully under the Lanham Act and that such infringements and unfair competition have been willful, deliberate, intentional, malicious and in bad faith.

(c)      Defendants' wrongful conduct was a breach of the implied covenant of good fait and fair dealing;

(d)      Defendants' wrongful conduct and actions were in violation of Trademark Dilution under N.Y. General Business Law § 360-1;

(e)      Defendants' wrongful conduct was in violation of Unfair Competition under the common law of New York.

2.      That the Defendants, and its affiliates, divisions, officers, directors, principals, servants, employees, successors and assigns, and all those in active concert or participation, be enjoined and restrained preliminarily, perpetually and permanently from:

(a)      using Plaintiff's Royal Silk marks, or any other mark that so resembles Plaintiff's marks, so as to be likely to cause confusion, deception or mistake as to the designation of origin, which tends to pass off third-party goods as those of Plaintiff;

(b)      using Plaintiff's Royal Silk marks, or any other mark that so resembles Plaintiff's marks, as keywords to sell advertising third-party sellers for goods that are not authorized by Plaintiff;

(c)      using any false or misleading designation or representation of fact which directly or indirectly misrepresents the nature, characteristics, qualities, or geographic origin of Plaintiff's goods, services  or commercial activities;

(d)      any unfair and unlawful business practices or any conduct that otherwise infringes Plaintiff's Royal Silk marks or competes unfairly with Plaintiff; and

(e)     any unfair and unlawful business practices that harm, tarnish and damage the public image and business reputation of Plaintiff, and dilute Plaintiff's Royal Silk marks by associating it with fake silk, imitation silk, faux silk and/or non-silk products.

3.     Awarding Plaintiff all damages, including punitive and exemplary, sustained by him as a result of the Defendants' gains, profits, savings and other advantages derived from their willful unlawful acts, and trebling those amounts, as may be the case, pursuant to 15 U.S.C. § 1117 or the laws of New York, and in an amount to be proven at trial.

4.     Alternatively, awarding Plaintiff statutory damages pursuant to 15 U.S.C. § 1117 and in violation of Section 1125(d)(1) of not less than $1,000.00 nor more than $100,000 per use of Plaintiff's mark as the Court considers just and proper.

5.     Directing that Defendants provide complete accountings of all sales of all colorable keywords and advertisements relating to "Royal Silk" for the last six years, whether identified or not in this complaint by Plaintiff, or in any subsequent amended complaints by Plaintiff.

6.     Directing that Defendants provide complete accounting of all sales, fees, and charges across categories and departments derived from any colorable use of the keywords "Royal Silk" for its own products and services for the last six years.

7.     Directing that Defendants provide complete accounting of sales and contact information of third-party vendors, jointly identified by Plaintiff and Amazon, who have used the words "silk" and "satin" to promote and sell non-silk and other synthetic products and services for the last six years.

8.     Directing Defendants to file with the Court and serve upon Plaintiff, within thirty (30) days after entry and service of judgment, a report in writing and under oath setting forth in detail the manner and form by which Defendants have complied with the provisions of all the paragraphs above.

9.    Awarding Plaintiff his costs, reasonable attorneys' fees (to the extent that these are incurred), and related legal, research, expert and consultation costs and disbursements, together with pre-judgment and post-judgment interest.

10.    Awarding Plaintiff all other relief to which he is entitled and such other or additional relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

In conformity with the provisions of Rule 38(b) for the Federal Rules of Civil Procedure, as well as the Local Rules,  Plaintiff hereby demands a trial by jury of all issues so triable.

DATED:  April 17, 2022

Respectfully submitted by: ___*Prakash Melwani*___.

Prakash Melwani (*pro se*)
P.O. Box 805
Princeton Junction, NJ 08550
TEL:  (212) 505-1818
FAX:  (609) 987-8888
EMAIL: pakmelwani@comcast.net

# EXHIBIT A

## EXHIBIT A

1-48 of over 10,000 results for "royal silk"

Sort by: Featured ⌄



**Amazon Prime**
☐ prime

**Prime Try Before You Buy**
☐ Try Before You Buy

**Department**
Clothing, Shoes & Jewelry
 Men's Underwear
 Men's Handkerchiefs
 Women's Tops, Tees & Blouses
 Women's Fashion Scarves
 Girls' Underwear
 Boys' Underwear
 Eye Makeup Brushes & Tools
 Stuffing & Polyester Fill
 Laundry Bags
 ← See All 14 Departments

**Customer Reviews**
★★★★☆ & Up
★★★☆☆ & Up
★★☆☆☆ & Up
★☆☆☆☆ & Up

**Amazon Fashion**
☐ Our Brands
☐ Popular Brands

**Brand**
☐ RIIQIICHY
☐ Port Authority
☐ BABEYOND
☐ Royal Silk
☐ Barry.Wang

**Price**
Up to $25
$25 to $50
$50 to $100
$100 to $200
$200 & above
[$ Min] [$ Max] [Go]

**Deals & Discounts**
All Discounts
Today's Deals

**Apparel Pattern**
☐ Animal Print
☐ Argyle
☐ Camouflage
☐ Cartoon
☐ Checkered
☐ Chevron
☐ Floral
☐ Fruits
☐ Geometric
☐ Hearts
☐ Herringbone
☐ Houndstooth
☐ Letter Print
☐ Moire
☐ Paisley
☐ Plaid
☐ Polka Dots
☐ Solid
☐ Stars
☐ Striped

**Special Clothing Size**
☐ Big & Tall
☐ Husky
☐ Juniors
☐ Petite
☐ Plus Size

**Men's Clothing Size**
[XXS] [XS] [S] [M] [L]
[XL] [2XL] [3XL] [4XL] [5XL]
[6XL]

**Men's Big & Tall Clothing Size**
[XST] [ST] [MT] [LT] [XLT]
[2XBT] [3XBT] [4XBT] [5XBT] [6XBT]
[7XBT] [8XBT] [XLB] [2XLB] [3XLB]
[4XLB] [5XLB] [6XLB] [7XLB] [8XLB]

### RESULTS
Price and other details may vary based on product size and color.



Sponsored ⓘ
**Royal Silk**
The Original Silk Conditioner™ by Royal Silk® - Smooth as Silk for Hair...
★★★★☆ 48
$12⁹⁵ ($1.62/Fl Oz)
✓prime FREE One-Day
Get it Tomorrow, Mar 28
Only 9 left in stock - order soon.

**INTIMO**
Men's Classic Silk Boxers
★★★★☆ 680
$39⁹⁵
✓prime

**KISS**
Lash Couture Luxtensions Royal Silk (Pack of 3)
★★★★☆ 76
FREE Delivery by Fri, Apr 1 for Prime members
More Buying Choices
$18.77 (8 new offers)

Sponsored ⓘ
**Royal Silk**
The Original Silk Shampoo by Royal Silk. Soft as Silk for Hair Like Silk...
★★★★☆ 54
$12⁹⁵ ($1.62/Fl Oz)
✓prime FREE One-Day
Get it Tomorrow, Mar 28
Only 9 left in stock - order soon.

**Royal Silk**
Fine White 100% Silk Pocket Square for Men by Royal Silk - Full-Sized...
★★★★☆ 674
$12⁵⁰
✓prime FREE One-Day

**RIIQIICHY**
Silk Scarf for Women Feeling Silk Sunscreen Long Large Lightweight...
★★★★☆ 487
$13⁹⁹ $26.99
FREE Delivery for Prime members

**Fairfield**
Fairfield PFRS12 Poly-Fil Royal Silk Fiber Fill Bag, 12 oz, White
★★★★☆ 6
$16¹⁴
Get it Wed, Mar 30 - Fri, Apr 1
Only 20 left in stock - order soon.
More Buying Choices
$16.10 (5 new offers)

**Wrapables**
Solid Color Silk Long Scarf
★★★★☆ 1,266
$13⁹⁹
✓prime

**MissNina**
Women's Floral/Patterned Silky Kimono Robes Long Satin Bathrobes...
★★★★☆ 1,850
$21⁹⁹ $25.99
Save 10% with coupon (some sizes/colors)
✓prime
try before you buy

**vimate**
100% Mulberry Silk Scarf-35" Square or Solid Long Silk Hair Wrap Scarf...
★★★★☆ 342
$15⁹⁹ $17.99
Save 5% with coupon (some sizes/colors)
✓prime

**Nature Republic**
NATURE REPUBLIC Ginseng Royal Silk Emulsion 120 mL New !!
★★★★☆ 6
$52⁸⁵
✓prime FREE One-Day
Get it Tomorrow, Mar 28
Only 2 left in stock - order soon.
More Buying Choices
$51.30 (7 new offers)

**Royal Silk**
Large Laundry Bag for Silks and Fine Washables by ROYAL SILK
★★★★☆ 51
$9⁹⁹
✓prime FREE One-Day
Get it Tomorrow, Mar 28
Only 5 left in stock - order soon.

# EXHIBIT B

EXHIBIT B



# EXHIBIT C

EXHIBIT C



**Fairfield**

Fairfield PFRS12 Poly-Fil Royal Silk Fiber Fill Bag, 12 oz, White

 ⌄ 6

$16¹⁴

Get it **Fri, Apr 1 – Tue, Apr 5**
Only 3 left in stock - order soon.
More Buying Choices
$16.09 (7 new offers)

# EXHIBIT D

EXHIBIT D



**Nature Republic**

NATURE REPUBLIC Ginseng Royal Silk
Emulsion 120 ml. New !!

 6

$52⁵⁰

✓prime Get it as soon as **Thu, Mar 31**
FREE Shipping by Amazon
Only 2 left in stock – order soon.
More Buying Choices
$51.50 (7 new offers)

# EXHIBIT E

EXHIBIT E



EXHIBIT E

