UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| PRAKASH MELWANI,<br><br>              Plaintiff,<br><br>      v.<br><br>AMAZON.COM, INC., et al.,<br><br>              Defendants. | CASE NO. C21-1329RSM<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This case comes before the Court on Defendant Amazon.com, Inc. ("Amazon")'s Motion for Summary Judgment. Dkt #87. Plaintiff Prakash Melwani has filed a sealed opposition brief. Dkt. #103. The Court has determined that it can rule without the need of oral argument. For the following reasons, the Court GRANTS IN PART AND DENIES IN PART Amazon's Motion.

## II. BACKGROUND

Plaintiff Melwani is the individual owner of the Royal Silk trademark and manufactures and sells a wide variety of products using this trademark through his company Royal Silk Direct, Ltd. Dkt. #94 at 9 and 17. Defendant Amazon is the well-known online retail giant.

Amazon sells its own products and allows third parties to sell products on its website. Royal Silk products have been sold on Amazon.com since 2006. Dkt. #91 ("Leach Decl."), ¶ 5.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 1

Amazon allows third-party sellers like Royal Silk Direct to set their own prices and to display their own information in product listings.

As a seller on Amazon, Plaintiff agreed to the Amazon Business Solutions Agreement ("BSA"). *Id*. at ¶7. The BSA is the contract that governs the relationship between Amazon and third-party sellers on Amazon. *Id*. Plaintiff has also enrolled in Amazon's Brand Registry, which is a program designed to help rightsholders protect their brands. Dkt. #96 ("Allen Decl."), ¶¶ 3–4. Royal Silk Direct maintains an authorized Royal Silk "storefront" on Amazon.com.

Plaintiff alleges he has been "plagued" by third party infringers of the Royal Silk marks across categories of goods at the Amazon marketplace. Dkt. #49 at 6. He attaches to Amended Complaint several screenshots from Amazon.com, relied on as evidence by both parties. *See id*. at 30–40. In the last two to three years, Plaintiff alleges that legal actions and notices have resulted in the removal of about 200 infringing listings from Amazon.com that were attributed to about 100 different unauthorized third-party sellers. *Id*. Plaintiff's central allegation of wrongful conduct is that when customers use Amazon's Search Box (the search bar at the top of its e-commerce website) to search for "Royal Silk," results regularly include many products not sold by Plaintiff. These products are sold by other third-party sellers and Amazon itself. Plaintiff alleges that these search results are "outright false or outright erroneous" as well as "false, deceptive and misleading in each case and likely to cause mistake or to deceive the public about the origin, sponsorship, connection, association, or affiliation of the third-party sellers to Plaintiff and its valid Royal Silk marks." *Id.* at 15. Plaintiff alleges that Amazon has misappropriated his trademark name by using the keyword "Royal Silk" on its webpage in various ways that: confuse the customer, "rob and thwart Plaintiff's ability to exercise his right to quality and image control," and ultimately allow Amazon to "unlawfully profit[] from its own  brands' targeted use of

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 2

Plaintiff's marks." *Id*. at 18.  Plaintiff alleges that Amazon sells the "Royal Silk" keyword to third party advertisers. *Id.* at 19.

The way that search results are generated on Amazon.com is not intuitive or simple.  As explained by Amazon's attached declarations and exhibits, the search results display a combination of what the customer likely wants (as determined by Amazon) and what sellers want the customer to see (as determined by Amazon and sellers willing to pay advertising fees to Amazon).  According to Amazon, sponsored ads may be displayed at the top of, alongside, or within shopping results and on product pages.  Dkt. #93 ("Sengupta Decl."), ¶ 3.  Ads are shown to customers on search results pages based on keywords.  *Id*.  Amazon allows third parties to bid on keywords in four different ways: broad, phrase, exact, or negative.  *Id*. at ¶ 4.  A "broad" match may include singulars, plurals, variations, synonyms, and related terms as determined by the meaning of the keyword and the context of the advertised products.  *Id*. at ¶ 5.  The keyword itself may not be contained in the customer shopping query.  *Id*.  For "phrase" keyword bids, the shopping query must contain the exact phrase or sequence of words.  *Id*.  A shopping query for "exact" keyword bid must exactly match the keyword or sequence of words in order for the ad to appear, and may also match close variations of the exact term.  *Id*.  Sellers may also use "negative" keyword bids to exclude queries, either using negative phrases or negative exact match types.  *Id*.  The parties agree that "[t]he act of Amazon allowing third parties to bid on 'Royal Silk' as advertising keywords is permissible under New York law."  Dkt. #94 ("Bennett Decl."), ¶14, Ex. L at 1.

When ads are shown to customers in search results, they are marked as "Sponsored" in a smaller, grayed-out font.  *See* Dkt. #87 at 10.  It is not immediately obvious from the search result page who is selling each product—the image, seller, and product description are provided without

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 3

a clear label for each. *See, e.g., id.* (a screenshot with a product image of a sack with the words "Royal Silk" emblazoned on the front, followed by a bold word "Fairfield," followed by the words "Fairfield… Royal Silk Fiber Fill Bag…"). Once a customer clicks on an item for sale, however, the seller is identified on the next page in the "sold by" line immediately below the "Add to Cart" and "Buy Now" buttons on each product's detail page. Leach Decl. at ¶4. During the checkout process, the order confirmation page also identifies the seller on the same page where the user clicks the "Place Your Order" button. *Id*.

The Amended Complaint brought causes of action for false designation of origin under 15 U.S.C. § 1125(a)(1)(A), false advertising under 15 U.S.C. § 1125(a)(1)(B), breach of the implied covenant of good faith and fair dealing, trademark dilution under N.Y. General Business Law § 360-1, and unfair competition under the common law of New York. Dkt. #49. All of these were dismissed by this Court except the New York trademark dilution and unfair competition claims. Dkt. #56. These are now the subject of the instant Motion.

Amazon has retained an expert, Hal Poret, who conducted a survey of 500 participants to test brand awareness of Plaintiff's Royal Silk marks. Dkt. #88 ("Poret Decl."). Half of the participants were selected from New York State, the rest coming from around the United States. *Id.* at 22. Only 12% of the survey respondents were aware of the brand Royal Silk. *Id*. at 14. In contrast, consumers recognized comparator brands Under Armour, Kate Spade, and Nine West at 95.8%, 78.0%, and 71.0% respectively. *Id*.

### III.   DISCUSSION

#### A.   Legal Standard for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 4

R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. New York Claims**

The Court will address Plaintiff's remaining claims simultaneously. The New York anti-dilution statute states:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark or trade name shall be a ground for injunctive relief in cases of infringement of a mark registered or not registered or in cases of unfair competition, notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

NYGBL § 360-I (formerly § 368d). A claim under New York's anti-dilution statute requires "either likelihood of confusion or bad faith." *Nina Ricci, S.A.R.L. v. Gemcraft Ltd.*, 612 F. Supp. 1520, 1532 n.11 (S.D.N.Y. 1985) (citing *Beneficial Corp. v. Beneficial Cap. Corp.*, 529 F. Supp. 445, 451 (S.D.N.Y. 1982)). To demonstrate likelihood of confusion, Plaintiff must prove "(1)

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 5

that the trademark is truly distinctive or has acquired secondary meaning, and (2) a likelihood of dilution either as a result of 'blurring' or 'tarnishment.'" *Bubble Genius LLC v. Smith*, 239 F. Supp. 3d 586, 603 (E.D.N.Y. 2017) (citations omitted). Blurring occurs "where the defendant uses or modifies the plaintiff's trademark to identify the defendant's goods and services, raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994) (cleaned up). Tarnishment occurs where a mark is "'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" *Deep Foods Inc. v. Deep Foods Inc.*, 419 F. Supp. 3d 569, 585 (W.D.N.Y. 2019). New York's General Business Law §360-l "does not permit a dilution claim unless the marks are 'substantially' similar." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 111 (2d Cir. 2010).

"The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Saratoga Vichy Spring Co. v. Lehman*, 625 F.2d 1037, 1044 (2d Cir. 1980); *see also Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995). "To prevail on a New York unfair competition claim, a plaintiff must show either actual confusion or a likelihood of confusion, and there must be some showing of bad faith on the part of the defendants." *Sly Mag., LLC v. Weider Publ'ns L.L.C.*, 346 F. App'x 721, 723 (2d Cir. 2009) (internal quotation marks omitted); *see also Miss Universe*, 672 F. Supp. 2d at 596 (similar).

Amazon highlights Plaintiff's lack of evidence to support these claims:

> …Plaintiff has admitted in his interrogatory responses that there is no evidence of Amazon causing any instance of actual consumer

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 6

confusion or deception regarding the Royal Silk Marks. (Bennett Decl. ¶3, Ex. A at 7 ("Plaintiff does not know, does not have available, and cannot recite the instances of actual consumer confusion or deception about confusion or deception regarding the Asserted Marks caused by Amazon.").) He has also admitted that he has no evidence that Amazon (1) diluted, tarnished, or made less distinctive any of Plaintiff's Royal Silk Marks, or (2) harmed, tarnished, or damaged Plaintiff's public image or business reputation. (*Id*. at 7–8 ("Plaintiff does not know, does not have available, and cannot recite all facts supporting the contention that Amazon diluted, tarnished, or made less distinctive any of the Asserted Marks," and "Plaintiff does not know, does not have available, and cannot recite all facts supporting the contention that Amazon harmed, tarnished, and damaged the public image and business reputation of Plaintiff.").) Discovery in this case is closed.

Dkt. #87 at 11.

Amazon attacks the distinctiveness of Plaintiff's trademark, citing to the 500-person survey of its expert witness and two New York cases where similar survey results were dispositive. *Id*. at 15 (citing *Jackpocket, Inc. v. Lottomatrix* NY LLC, 645 F. Supp. 3d 185, 229–30, 280, (S.D.N.Y. 2022) and *Alzheimer's Disease and Related Disorders Ass'n., Inc. v. Alzheimer's Found. of Am., Inc.*, 307 F. Supp. 3d 260, 290 (S.D.N.Y. 2018)).

Plaintiff, in turn, argues that material facts are in dispute. He attacks the methodology used by Amazon's expert to determine whether the Royal Silk mark is distinctive. Dkt. #103 at 4–5. He points to a 2005 jury verdict in a New York court that determined his Royal Silk mark was "distinctive" for purposes of the legal issues in that case. *Id*. at 3. He reminds the Court that Royal Silk products have been sold on Amazon.com since 2006.

In both *Jackpocket* and *Lottomatrix*, *supra*, the court's rulings were included in findings of fact and conclusions of law after trials on the merits. As such, these cases do not stand for the proposition that a single survey result, whose methodology is attacked by the opposing party, can alone justify summary judgment dismissal of a claim such as this one. It is improper on summary

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 7

judgment to weigh this evidence to determine the truth of the matter, and in any event the Court is to view the evidence and draw inferences in the light most favorable to Plaintiff as the non-moving party. The Court finds that Plaintiff has made a sufficient showing as to distinctiveness to survive summary judgment. The remainder of Amazon's arguments on this topic are best presented to the jury.

Amazon next argues that it cannot be liable for blurring or tarnishment unless it "used" Plaintiff's mark, and that "Courts, however, reject dilution by blurring or tarnishment claims where the defendant does not itself use the marks to create an association with its own products." Dkt. #87 at 17 (citing *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 112 (2d Cir. 2010)). In response, Plaintiff does not address Amazon's citations but states "[i]t is undeniable that Amazon 'used' the ROYAL SILK mark by selling the keywords to third-party sellers via its entity Amazon Ads;" that "Amazon 'used' the 'Royal Silk' mark to generate its Search Results as well as to populate the Search Results with sponsored and non-sponsored ads by third-party sellers and advertisers interested in the 'Royal Silk' keywords;" and that "Amazon used the keywords "Royal Silk" to sell its own products." Dkt. #103 at 3–4. The Court finds the evidence that Amazon used the Royal Silk mark in these ways sufficient to create a material dispute of fact. Furthermore, the *Tiffany* case is not entirely dispositive. Amazon's citation demonstrates only that the court in that case could not find eBay "used" Tiffany's mark to refer to eBay's own product, thus there was "no second mark or product at issue here to blue with or tarnish 'Tiffany.'" 600 F.3d at 112. The Second Circuit then stated "Tiffany argues that counterfeiting dilutes the value of its product. Perhaps. But insofar as eBay did not itself sell the goods at issue, it did not itself engage in dilution." *Id*. Here, it could be argued that Amazon did sell the goods at issue, and did use the Royal Silk keyword to sell its own Amazon branded products in some instances. There are several

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 8

factual discrepancies between the *Tiffany* case and the facts here. These discrepancies are sufficient to make it impossible for the Court to rely on this case to rule as a matter of law that Amazon did not "use" the Royal Silk mark for purposes of the New York anti-dilution statute. The same is true of Amazon's other case, *Nike, Inc. v. B&H Customs Servs., Inc.*, 565 F. Supp. 3d 498, 513, 517-18 (S.D.N.Y. 2021). The defendant in that case was not accused of selling the products at issue but merely shipping them. Here, Amazon is accused of selling the products at issue. To the extent Amazon believes that it did not sell these products under New York law, but merely provided a marketplace for third-party sellers, such has not been adequately established in the briefing on this Motion and can be argued at trial.

Amazon argues that "[e]ven if Plaintiff could point to some evidence that Amazon uses Plaintiff's trademarks in a way that would be relevant to his dilution claim, Plaintiff cannot overcome the fact that Amazon search results for 'royal silk' do not dilute Plaintiff's trademarks as a matter of law." Dkt. #87 at 18. The Court disagrees that such can be determined now, based on this evidence, as a matter of law. The record shows that searching for "Royal Silk" on Amazon.com could present customers with products that appear to be labeled "Royal Silk" either as a description or in the product image, even though those products were not being sold by Plaintiff. Viewing the evidence and drawing inferences in the light most favorable to Plaintiff as the non-moving party, this could constitute evidence to support Plaintiff's New York dilution claim.

Turning to the unfair competition claim, Amazon makes the same arguments about "use" as above. Amazon also quotes this Court as finding that Plaintiff has "failed to demonstrate a likelihood of confusion as a matter of law." Dkt. #87 at 27 (citing Dkt. #56 at 9). The Court's full statement was, "[t]he Court has already found Plaintiff failed to demonstrate a likelihood of

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 9

confusion as a matter of law in the federal context." Dkt. #56 at 9. This was quoted from a paragraph where the Court permitted the instant New York claims to survive Amazon's Motion to Dismiss. Amazon presents a subsection titled "Plaintiff lacks any evidence of bad faith," Dkt. #87 at 27. Amazon's briefing here really demonstrates what Amazon should tell a jury—that its evidence is more convincing than Plaintiff's evidence. Plaintiff's main evidence of bad faith appears to be the circumstance that Amazon offered "assurances" to Plaintiff that it would protect his trademark through a "brand gate" but that this tool "simply did not work," as evidenced by the screenshots relied on by both parties showing "Royal Silk" products for sale from third-party sellers. *See* Dkt. #103 at 7–11. Although circumstantial, the Court finds that Plaintiff has presented at least some evidence of bad faith, and that this question is a fact-intensive inquiry best left for the jury.

**C. Monetary and Punitive Damages**

For each of his claims, "Plaintiff is seeking neither lost profits nor royalty payments." Bennett Decl. at ¶ 3, Ex. A. at 6. Instead, Plaintiff seeks defendant's profits and punitive damages. *Id.* Amazon argues that both forms of damages are unavailable as a matter of law. Dkt. #87 at 28–29.

The Court agrees that monetary and punitive damages are not available under Plaintiff's anti-dilution claim. *See Law Offs of Bradley J. Rephen, P.C. v. Lemberg & Assoc., LLC*, No. 7:10-cv-4964-JGM, 2011 WL 13267203, at *4 (S.D.N.Y. 2011) ("The sole relief possible on a section 360-l claim is injunctive relief."). Damages for Plaintiff's unfair competition claim are available if Plaintiff can demonstrate lost revenues. *See E.J. Brooks Co. v. Cambridge Sec. Seals*, 31 N.Y.3d 441, 449 (2018). Here, Plaintiff has not produced any evidence that he lost money because of Amazon's conduct. In fact, Plaintiff refused to produce any evidence of his own

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 10

profits and revenues—and agreed that he would not rely on any such evidence in this case. Bennett Decl. at ¶ 10, Ex. H at 6; *Id.* at ¶ 1, Ex. I at 1. Instead, Plaintiff seeks damages based on Amazon's revenues from third-party sellers' purchase of keyword advertisements trigged by the keyword "royal silk." *Id.* at ¶ 3, Ex. A at 6 and ¶ 13, Ex. K at 9. The Court finds that this cannot form a source of damages without some basis in law, and Plaintiff fails to point to such. The Court concludes that Plaintiff has failed to demonstrate "the amount which the plaintiff would have made except for the defendant's wrong," *see E.J. Brooks*, *supra*, that such is an essential element of his claim for compensatory damages, and that his failure means he cannot seek compensatory damages at trial.

To obtain punitive damages, Plaintiff must show that Amazon's conduct: (1) was "egregious"; and (2) violates a public right or is a part of a pattern of similar conduct directed at the public generally. *Rocanova v. Equitable Life Assur. Soc. of U.S.*, 83 N.Y.2d 603, 613 (1994); *see also Linkable Networks, Inc. v. Mastercard Inc.*, 125 N.Y.S.3d 92, 94 (2020). The Court finds that egregiousness is typically left for the trier of fact. Amazon argues that its conduct here was not directed at the public:

> New York courts have recognized that punitive damages' "purpose is not to remedy private wrongs but to vindicate public rights." *Rocanova*, 83 N.Y. 2d at 613; *see also New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 315–16 (1995). Thus, it is not enough for Plaintiff to show conduct directed to himself, he must show conduct "directed at the public generally." *Id*. Plaintiff has not done so. His allegations are directed at supposed wrongs done to him personally—for example, the dilution of his individual trademarks—and not conduct directed more broadly at the public. That's not enough. *See TVT Records v. Island Def Jam Music Grp.*, 412 F.3d 82, 95 (2d Cir. 2005) (defendant's breach of a contract with plaintiff "hewed more to the 'isolated transaction incident to an otherwise legitimate business' then to the 'gross and wanton fraud upon the public' required by *Walker*");*United States ex rel. Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp.*, 95 F.3d 153, 161 (2d Cir. 1996) (defendant's failure to pay

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 11

> plaintiff as well as defendant's fraud did not "evince[] a pattern of conduct harming the general public").

Dkt. #87 at 30–31.

On this issue, Plaintiff states only:

> Put simply — Amazon engages in unfair competition not just through bad-faith misappropriation and profiteering of Plaintiff's ROYAL SILK mark, but also through bad-faith misappropriation and profiteering of trademarks belonging to tens of millions of other third-party rights owners who are sellers on Amazon's platform. Amazon does so because it is perfectly legal for it to sell trademarked keywords and terms regardless of who they belong to. It is also legal for third-party sellers and advertisers to buy such trademarked keywords from Amazon. However, what is not legal — is for Amazon to pocket all the change without any accounting or compensation to the rights owners. In short, Amazon is not just ripping-off Plaintiff but also ripping-off tens of millions of other rights owners.

Dkt. #103 at 20.

Plaintiff's lack of evidence here is fatal to his claim. The Court can easily imagine that Amazon's alleged conduct here is experienced by hundreds if not thousands of other third-party sellers. The Court imagines it would have been relatively easy for Plaintiff to gather evidence of such. Nothing of the sort is presented to the Court. Instead, there is only argument and speculation, which cannot create a genuine dispute of fact. Given all of the above, the Court will dismiss Plaintiff's request for punitive damages.

## IV.   CONCLUSION

The Court is concerned by Plaintiff's lack of evidence of customer confusion. On the other hand, it seems possible for a jury to consider the evidence of Amazon's bad faith, as presented by Plaintiff, as well as the undisputed evidence of how Amazon displays Plaintiff's products in search results, and come to reasonable conclusions about the likelihood of confusion without testimony from actual customers. The Court is also concerned about Plaintiff's lack of

ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT – 12

expert testimony. As it currently stands, Plaintiff will have an uphill battle proving his case at trial.

Having reviewed the relevant briefing and the remainder of the record, the Court hereby finds and ORDERS that Defendant Amazon's Motion for Summary Judgment, Dkt #87, is GRANTED IN PART AND DENIED IN PART as stated above. Plaintiff may not seek compensatory or punitive damages at trial.

DATED this 18th day of January, 2024.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE